UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

——

LEONEL FRANCO-AVINA,

                Petitioner,                Case No. 1:14-cv-566

v.                                        Honorable Janet T. Neff

CARMEN D. PALMER,

                Respondent.

_____/

## REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Petitioner Leonel Franco-Avina is presently incarcerated at the Thumb Correctional Facility in Lapeer, Michigan. On July 29, 2010, a Kent County Circuit Court jury found Petitioner guilty of second-degree murder, MICH. COMP. LAWS § 750.317, and operating a vehicle while intoxicated (OWI) causing death, MICH. COMP. LAWS § 257.624. On August 25, 2010, Judge George S. Buth of the Kent County Circuit Court sentenced Petitioner to concurrent terms of life imprisonment on the second-degree murder conviction and 10 to 15 years on the OWI causing death conviction.

Petitioner, with the assistance of his appointed appellate counsel, appealed his convictions and sentences to the Michigan Court of Appeals, raising five issues:

I.      The defendant was unlawfully deprived of the effective assistance of trial counsel when trial counsel failed to have the defendant independently evaluated to raise and preserve properly an insanity or temporary insanity defense.

II.     The trial court unlawfully deprived the defendant of his due process, equal protection, and other protected rights under the United States and Michigan

constitutions when it entered a judgment of conviction and sentence on evidence that is insufficient to support the 2d-degree murder conviction.

III.    The trial court unlawfully deprived the defendant of his due process, equal protection, and other protected rights under the United States and Michigan constitutions when it failed to instruct the jury properly on the elements of 2d-degree murder.

IV.    The trial court unlawfully deprived the defendant of his due process, equal protection, and other protected rights under the United States and Michigan constitutions when it scored 15 points on OV-5.

V.    The trial court unlawfully violated the United States and Michigan constitutions in sentencing the defendant to a prison term of life on the 2d-degree murder conviction and to a prison term of 10-15 years on the OUIL causing death conviction.

(Pet.'s Mich. Ct. App. Br., ECF No. 13-10, PageID.697.)  Anticipating that the court might consider the jury instruction issue (Issue III) waived by counsel's approval of the instructions, or the sentencing issues (Issues IV and V) waived by trial counsel's failure to object at sentencing, Petitioner also argued that counsel rendered ineffective assistance with regard to the instructions and sentencing.  The court of appeals refused to consider the ineffective assistance claims because they were not raised in the "Questions Presented" section of Petitioner's brief.  The court of appeals also rejected each of Petitioner's arguments on the merits and affirmed the trial court by an unpublished opinion entered December 13, 2011.  (Mich. Ct. App. Op., ECF No. 13-10, PageID.689-693.)

Petitioner filed a pro per application for leave to appeal in the Michigan Supreme Court.  In that court, in addition to his court of appeals issue regarding the second-degree murder elements jury instruction (Issue III above), he raised the following issues:

VI.    Is defendant entitled to have his appeal of right reinstated where he was deprived [of] his constitutional right to effective assistance of appellate counsel?

- 2 -

VII.    Is the defendant-appellant entitled to a remand for a[n] evidentiary hearing pursuant to *People v. Ginther* to determine whether counsel's failure to request a lesser included offense instruction on involuntary manslaughter constitutes ineffective assistance of counsel and whether his right to a fair trial was prejudiced?

VIII.   Is the defendant-appellant entitled to a remand for a[n] evidentiary hearing pursuant to *People v. Ginther*, to determine whether counsel's failure to object to the improper instructions on the elements of 2d degree murder constitutes ineffective assistance of counsel and whether he was prejudiced by counsel's error(s)?

(Pet.'s Mich. App. for Leave to Appeal, ECF No. 13-11, PageID.878.) Petitioner also filed a motion to remand for a *Ginther* hearing[1] as referenced in Issues VII and VIII. (Pet.'s Mot. to Remand, ECF No. 13-11, PageID.916-917.) By order entered May 21, 2012, the Michigan Supreme Court denied Petitioner's application for leave and his motion to remand. (Mich. Ord., ECF No. 13-11, PageID.794.)

On March 6, 2013, Petitioner returned to the trial court and filed a motion for relief from judgment pursuant to MICH. CT. R. 6.500 *et seq*. (Pet.'s Mot. for Relief from Judgment, ECF No. 13-6, PageID.588-589.) By way of his motion, Petitioner raised Issue VI from his supreme court application for leave to appeal, and five new issues:

IX.     Defendant was denied the effective assistance of counsel where his attorney followed an unsound trial strategy, and failed to subject the prosecutor's case to adversarial testing, which amounted to a denial of the defendant's constitutional right to due process of law, a fair trial, and effective assistance of counsel. U.S. Const. Amends. V, VI, XIV.

X.      The defendant was denied a fair trial by the admission of testimony from a witness who was not qualified to testify as an expert because the defense was not allowed to *voir dire* the witness and the jury was not made aware of the witness' qualifications to testify as an expert. U.S. Const. Amend. XIV.

---

[1]In *People v. Ginther*, 212 N.W.2d 922 (Mich. 1973), the Michigan Supreme Court approved the process of remanding to the trial court for an evidentiary hearing when an appellant has raised claims of ineffective assistance of counsel that require development of a record.

XI.   The trial court abused its discretion and the defendant was denied a fair trial by the admission of testimony from a witness who was not qualified to testify as an expert because the defense was not allowed to *voir dire* the witness and the jury was not made aware of the witness's qualifications to testify as an expert.  U.S. Const. Amend. XIV.

XII.  Defendant is entitled to a new trial where an interpreter used in his trial effectively interfered with his right to present a defense and aid counsel in preparing that defense to the jury.  U.S. Const. Amends. V, VI, XIV.

XIII. The prosecutor's exercise of a peremptory strike to exclude the only remaining Latino member of the jury pool violated defendant's constitution[al] right to equal protection of the law.  U.S. Const. Amends. V, XIV.

(Pet.'s Br. in Support of Mot. for Relief from J., ECF No. 13-6, PageID.591-592.  The trial court denied Petitioner's motion by order entered July 9, 2013.

Petitioner filed applications for leave to appeal, first in the Michigan Court of Appeals, and then in the Michigan Supreme Court.  Those courts denied leave by orders entered October 17, 2013 (Mich. Ct. App. Ord., ECF No. 13-12, PageID.923), and February 28, 2014 (Mich. Ord., ECF No. 13-13, PageID.1017), respectively.

On May 22, 2014, Petitioner filed his habeas petition in this Court raising eleven issues (as they are identified above, Issues I-VI and IX-XIII).  On January 6, 2015, Respondent filed an answer to the petition,  (ECF No. 12), along with the state-court record, pursuant to Rule 5, Rules Governing § 2254 Cases, (ECF No. 13).   Respondent contends that Petitioner's habeas claims are procedurally defaulted or have no merit.  Upon review and applying the standards required by the Antiterrorism and Effective Death Penalty Act of 1996, PUB. L. 104-132, 110 STAT. 1214 (AEDPA), I find that Petitioner's claim are procedurally defaulted or without merit.  Accordingly, I recommend that the petition be denied.

**Factual background**[2]

Shortly after 7:00 a.m. on November 23, 2009, Petitioner was driving his pickup truck south on the East Beltline between Plainfield Avenue and 5 Mile Road in Grand Rapids, Michigan.  Unfortunately, he was driving south in one of the northbound lanes.  His headlights were off.  He was very drunk.  Within seconds of moving to the wrong side of the median, Petitioner collided head-on with a truck driven by Aaron Haynes.

Kent County sheriff's deputy Joseph Glynn arrived at the scene before the dust from the crash had settled.  He quickly ascertained that Haynes had been killed.  Petitioner was seriously injured.

There was no question that Petitioner was driving the truck that caused the crash or that he was intoxicated at the time.  Petitioner's counsel, in closing, acknowledged that there was no reasonable doubt that Petitioner had operated a vehicle while intoxicated causing death.  (Trial Tr. III, ECF No. 13-3, PageID.546.)  Counsel argued that the real issue for the jury was whether the prosecutor had provided sufficient evidence of intent to support a conviction for second-degree murder.  (*Id*., PageID.546-547.)  The entire trial came down to that issue.  The jury deliberated for less than two hours before returning a verdict of guilty on both charges.

---

[2]Petitioner provides a factual summary in his brief that accurately characterizes the testimony at trial.  (Pet.'s Br. in Support of Petition, ECF No. 2, PageID.40-46.)   The jury heard testimony from witnesses that fell into three groups: persons who interacted with or observed Petitioner in the hour preceding the accident (9 witnesses); first-responders who arrived after the accident (4 witnesses); persons who examined or tested evidence after the fact, i.e. blood, vehicles, etc . . . (5 witnesses); and one expert regarding the effects of alcohol (1 witness).

## Discussion

I.    AEDPA standard

This action is governed by the AEDPA.  *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  The AEDPA has "drastically changed" the nature of habeas review.  *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).   An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."   28 U.S.C. § 2254(d).  This standard is "intentionally difficult to meet."  *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655.  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts.  *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at 655.  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court.  *Greene v. Fisher*, 132 S. Ct. 38 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have

appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 132 S. Ct. at 44).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 2015 WL 1400852, at *3 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (quotations marks omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

II.    <u>Procedural default</u>

A.    <u>Exhaustion</u>

Before the court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim. *See O'Sullivan*, 526 U.S. at 842; *Picard v. Connor*, 404 U.S. 270, 275-77 (1971) (cited by *Duncan v. Henry*, 513 U.S. 364, 365 (1995) and *Anderson v. Harless*, 459 U.S. 4, 6 (1982)). To fulfill the exhaustion requirement, a petitioner must have fairly presented his federal claims to all levels of the state appellate system, including the state's highest court. *Duncan*, 513 U.S. at 365-66; *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845.

All of the issues Petitioner raised in his motion from relief from judgment (Issues VI, IX-XIII), have been presented to all levels of the state appellate system. The same can not be said, however, for the claims Petitioner raised on his direct appeal (Issues I-V). With respect to those issues, Petitioner raised only Issue III, regarding the second-degree murder elements jury instruction, at the Michigan Court of Appeals *and* the Michigan Supreme Court. Issues I-II and IV-V were

raised only in the Michigan Court of Appeals.[3]    Therefore, Petitioner has failed to exhaust those four issues.

Exhaustion is only a problem if there is a state court remedy available for petitioner to pursue, thus providing the state courts with an opportunity to cure any constitutional infirmities in the state court conviction. *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). If no further state remedy is available to the petitioner, exhaustion does not present a problem, but the claim is procedurally defaulted and the federal court must determine whether cause and prejudice exist to excuse the failure to present the claim in state court. *Id.*; *Gross v. Warden Lebanon Corr. Inst.*, 426 F. App'x 349, 356 (6th Cir. 2011) ("[A] petitioner may default by failing 'to raise a claim in state court, and pursue that claim through the state's ordinary appellate review procedures.'").

Under Michigan law effective August 1, 1995, a defendant may file one motion for relief from judgment under Michigan Court Rule 6.500 *et. seq.  See* MICH. CT. R. 6.502(G)(1). Petitioner already has filed his one allotted motion. He therefore has no available remedy. At this juncture, the court must consider whether there is cause and prejudice to excuse Petitioner's failure to present the claims in state court. *See Gray v. Netherland*, 518 U.S. 152, 161-62 (1996); *Rust*, 17 F.3d at 160.

To show cause sufficient to excuse a failure to raise claims on direct appeal, Petitioner must point to "some objective factor external to the defense" that prevented him from raising the issue in his first appeal. *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *see McCleskey*

---

[3]Petitioner acknowledges this problem, at least in part, in his petition. With respect to issues I-IV, Petitioner states: "Because this issue was not raised in the Michigan Supreme Court by the 'jailhouse lawyer' that helped Mr. Franco-Avina, it is waived and Mr. Franco-Avina does not wish to waste this Court's time in reviewing this issue." (Pet., ECF No. 1, PageID.5-8.) It is not clear why Petitioner makes that representation as to Issue III, which he clearly raised in the Michigan Supreme Court on his direct appeal, or why he does not make that representation as to Issue V (Id., PageID.12), which he clearly failed to raise in the Michigan Supreme Court on his direct appeal.

*v. Zant*, 499 U.S. 467, 497 (1991).  A petitioner who fails to demonstrate cause and prejudice cannot have a cognizable claim.  *Gray*, 518 U.S. at 162.  Further, where a petitioner fails to show cause, the court need not consider whether he has established prejudice.  *See Engle v. Isaac*, 456 U.S. 107, 134 n.43 (1982); *Leroy v. Marshall*, 757 F.2d 94, 100 (6th Cir. 1985).

Petitioner seems to be offering the shortcomings of his "jailhouse lawyer" as the cause which prevented Petitioner from raising Issue I, II, IV, and V in his direct appeal.  "A showing of cause requires more than the mere proffer of an excuse."  *Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006).  The Sixth Circuit has rejected several "causes" for defaults because they are not factors "external to the defense."  *See Johnson v. Wilson*, 187 F. App'x 455, 458 (6th Cir. 2006) (Petitioner's borderline mental impairment is  not an external factor and cannot be cause to excuse a procedural default); *Shorter v. Ohio Dep't of Rehabilitation and Corr.*, 180 F.3d 723, 725-726 (6th Cir. 1999) (U.S. Postal Service's delay in delivering application for leave to appeal is not external to defense where Petitioner's counsel chose to mail instead of hand deliver the document); *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004) (Petitioner's pro se status, ignorance of law and procedure, lack of notice, mistaken beliefs regarding requirements, lack of law library time, or unfamiliarity with the English language are not external to his defense); *Young v. Parker*, No. 94-6638, 1995 WL 363395, *2 (6th Cir. Jun. 15, 1995) (poor advice from prison case workers, inmate legal aids, or a state provided legal aid agency is not cause where there is no constitutional right to counsel); *McCaslin v. Hatfield*, No. 94-5673, 1995 WL 216911, *2 (6th Cir. Apr. 11, 1995) (bad advice from state funded inmate law clerks is not external to the defense).

Although a "jailhouse lawyer" is not counsel in a constitutional sense, the ineffective assistance of counsel can be "cause," but only if it rises to the level of a Sixth Amendment violation.

*Burroughs v. Makowski*, 411 F.3d 665, 668 (6th Cir. 2005).  Thus, if Petitioner is not entitled to counsel at the stage of the proceedings where ineffective assistance is rendered, the ineffective assistance cannot be cause.  *Coleman v. Thompson*, 501 U.S. 722, 752-755 (1991); *Ritchie v. Eberhart*, 11 F.3d 5878, 591-592 (6th Cir. 1993).  "[T]he right to appointed counsel extends to the first appeal of right, and no further."  *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987).  Because Petitioner was not entitled to counsel at the Michigan Supreme Court on his direct appeal, the ineffective assistance of counsel at that level could not serve as cause to excuse a procedural default. *Martinez v. Ryan*, 566 U.S. 1, 16 (2012); *Hodges v. Colson*, 727 F.3d 517, 531 (6th Cir. 2013); *Tolliver v. Sheets*, 594 F.3d 900, 929 (6th Cir. 2010).  As a corollary, failure to raise issues when a prisoner is acting pro se cannot be cause.  *Kissner v. Palmer*, 826 F.3d 898, 905 (6th Cir. 2016).

Petitioner's proffered excuse of ineffective assistance from his "jailhouse lawyer" does not suffice as "cause" to justify his failure to raise Issues I, II, IV, and V in the Michigan Supreme Court.  Because Petitioner has not shown cause for the failure to raise the issues in the supreme court,  prejudice need not be considered.

Petitioner might overcome his procedural default if he could demonstrate that manifest injustice would result from the procedural default bar.  To accomplish that result, Petitioner must make a colorable claim of innocence, he must establish that the claimed constitutional error "probably" resulted in the conviction of one who was actually innocent.  *Schlup v. Delo*, 513 U.S. 298, 322 (1995) (citing *Murray*, 477 U.S. at 495).  This requires a showing "that 'in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'"  *Coleman*, 244 F.3d at 540 (quoting *Schlup*, 513 U.S. at 329).  Petitioner has not even

- 11 -

attempted to make that showing.  Accordingly, I conclude that Petitioner's habeas Issues I, II, IV and V are procedurally defaulted.

B.    Other procedural defaults

Respondent contends that review of Petitioner's other habeas issues is also barred by procedural default.  For example, Respondent argues that review of Issue III, the only issue of the first five that was properly exhausted, is barred by the procedural default that follows from Petitioner's trial counsel's failure to object to the allegedly erroneous instruction.    Petitioner contends that his trial counsel erred when she failed to object to the instruction.  That error, Petitioner argues, serves as cause for the default.  As noted above, before counsel's errors can serve as cause to excuse a procedural default, the failure must rise to the level of a Sixth Amendment violation.  *Burroughs*, 411 F.3d at 668.

For counsel's error to be considered a Sixth Amendment violation, it must satisfy the test from *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).  In *Strickland*, the Supreme Court held to establish constitutionally ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.  *Id.*  At this point, I find myself mired in the morass described by the Sixth Circuit in *McLemore v. Bell*, 503 F. App'x 398 (6th Cir. 2012):

> The situation before us highlights the analytical morass in which procedural-default rules ensnare us when attempting to resolve federal constitutional claims. Paradoxically, in order to determine whether procedural rules prevent us from examining the merits of the petitioner's substantive claims, we must first examine the merits of those underlying substantive claims.  This is so because it is only by determining whether the substantive claims have merit that we can evaluate whether the petitioner actually suffered the prejudice necessary to establish his ineffective-assistance-of-counsel "cause" to excuse any procedural default resulting

from the application of state procedural rules. Thus, because we must reach the underlying merits of the petitioner's claims in order to dispose of the ineffective-assistance-of-counsel claims, we need not decide whether the petitioner's substantive claims have been procedurally defaulted. *See Mahdi v. Bagley*, 522 F.3d 631, 635 (6th Cir.2008). An analysis of the merits of the petitioner's substantive claims "present[s] a more straightforward ground for decision, prompting us to consider [these] issue[s] at the outset." *Arias v. Hudson*, 589 F.3d 315, 316 (6th Cir.2009) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525, 117 S.Ct. 1517, 137 L.Ed.2d 771 (1997) (allowing courts to reject habeas claims on the merits and skip procedural-default issues)).

*McLemore*, 503 F. App'x at 405. As the *McLemore* court recommends, rather than evaluating the merits of Petitioner's remaining habeas issue in furtherance of an evaluation of prejudice under *Strickland* which, if demonstrated, requires evaluating the merits in furtherance of an analysis of prejudice to overcome the procedural default bar which, if overcome, permits evaluation of the merits, I will simply evaluate the merits of Petitioner's remaining habeas claims.[4]

### III.    Second-degree murder jury instruction (habeas issue III)[5]

Petitioner complains that the trial court improperly instructed the jury regarding the "intent" requirement for second-degree murder. The court instructed the jury it could convict Petitioner if it concluded he "knowingly created a very high risk of death or great bodily harm knowing that death or such harm would be the likely result of his actions." (July 29, 2010 Trial Tr., ECF No. 13-3, PageID.562-563.) Petitioner contends the court should have instructed the jury it must find that Petitioner had an "intent to do an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." (Pet.'s Mich. Appl. for Leave to Appeal, ECF No. 13-11, PageID.913.)

---

[4]The same reasoning supports proceeding directly to the merits on habeas issues IX-XIII even if, as Respondent argues, consideration of those issues is also barred by procedural default.

[5]I will consider this issue despite Petitioner's offer to forego it based on his mistaken belief that he waived it by failing to raise it in the Michigan Supreme Court.

- 13 -

In *Ambrose v. Romanowski*, 621 F. App'x 808 (6th Cir. 2015), the court reviewed the clearly established federal law regarding the constitutional implications of erroneous state jury instructions:

> In general, the fact that a jury instruction was allegedly incorrect under state law is not a basis for federal habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 71–72, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991); *Byrd v. Collins*, 209 F.3d 486, 527 (6th Cir.2000). On habeas review, federal courts ask "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten*, 414 U.S. 141, 147, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973); *Estelle*, 502 U.S. at 72, 112 S.Ct. 475. It is not enough that the instruction was "undesirable, erroneous, or even 'universally condemned.'" *Estelle*, 502 U.S. at 72, 112 S.Ct. 475 (citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)). In evaluating the impact of the instruction, courts consider the claim in the context of the instructions and the trial record as a whole. *Cupp*, 414 U.S. at 147, 94 S.Ct. 396. The Supreme Court has defined the subcategory of infractions that constitute constitutional violations very narrowly. *Estelle*, 502 U.S. at 73, 112 S.Ct. 475 (citing *Dowling v. United States*, 493 U.S. 342, 352, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990)).

*Ambrose*, 621 F. App'x at 813.

In this instance, Petitioner's claim never progresses to the due process analysis because he has failed to show that the jury instruction was incorrect under state law. The language of which Petitioner complains is part of Michigan Criminal Jury Instruction 16.4 regarding the malice requirement for murder. It derives from *People v. Dykehouse*, 345 N.W.2d 150 (Mich. 1984). But, the standard language is certainly not the only permissible statement of the requisite intent. The language urged by Petitioner derives from *People v. Aaron*, 299 N.W.2d at 304 (Mich. 1980). The trial court's use of either formulation is not erroneous. *See People v. Humphreys-McPherson*, No. 330747, 2017 WL 1182472, *5 (Mich. Ct. App. Mar. 28, 2017) ("*Aaron* and *Dykhouse* have both been cited for their respective definitions of malice, and neither has been overruled. Because the trial court instructed the jury on the definition of malice as set forth in an

- 14 -

opinion of our Supreme Court that has not been overruled, we conclude that the trial court did not plainly err in declining to use the [other] instruction.") (footnote omitted).

Undoubtedly, the same reasoning prompted the Michigan Court of Appeals and the Michigan Supreme Court to reject Petitioner's invitation to find error in the "intent" instruction. Critically, that ends the analysis.  It is the prerogative of the state to define the elements of the crime and the federal courts are bound by their determination.  *See Johnson v. United States*, 559 U.S. 133, 138 (2010) ("We are, however, bound by the Florida Supreme Court's interpretation of state law, including its determination of the elements . . . ."); *Jackson v. Virginia*, 443 U.S. 307, 324 n.16 (1979) ("The respondents have suggested that this constitutional standard will invite intrusions upon the power of the States to define criminal offenses. Quite to the contrary, the standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law. ").  It is not the province of a federal habeas court to re-examine state-law determinations on state-law questions.  *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle*, 502 U.S. at 68.  The decision of the state courts on a state-law issue is binding on a federal court.  *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983).  The Sixth Circuit repeatedly has recognized "'that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'"  *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Bradshaw*, 546 U.S. at 76).  Accordingly, Petitioner's challenge to the murder "intent" jury instruction has no merit.

IV.    Expert opinion testimony (habeas issues X and XI)

The jury heard testimony from Thomas L. Coe, the Spectrum Health lab employee who testified regarding the tests he ran on Petitioner's blood sample, and Michigan State Police Trooper Joseph Young,  who testified regarding the crash scene.   Petitioner contends that these witnesses offered expert opinion testimony and that they were not qualified to be experts, his counsel was not permitted to conduct *voir dire* of the witnesses, and the jury was never made aware of the witnesses' qualifications.   These shortcomings, Petitioner argues, rendered his trial unfair.

The extraordinary remedy of habeas corpus lies only for a violation of the Constitution. 28 U.S.C. § 2254(a).  As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Id.* at 67-68.   Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68.   State-court evidentiary rulings cannot rise to the level of due process violations unless they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental. *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quotation omitted); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).   This approach accords the state courts wide latitude in ruling on evidentiary matters. *Seymour*, 224 F.3d at 552 (6th Cir. 2000).

Further, under the AEDPA, the court may not grant relief if it would have decided the evidentiary question differently.   The court may only grant relief if Petitioner is able to show that

the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law or if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts. *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000). Petitioner has not met this difficult standard.

The trial court flatly rejected Petitioner's challenge to the "expert" testimony of Coe and Young because, the trial court reasoned, neither Coe nor Young offered expert opinion testimony. With respect to Coe, the court stated:

> On July 29, 2010 Thomas L. Coe testified as a medical laboratory scientist employed by Spectrum Medical Center. He was not qualified as an expert and did not offer any expert opinions. Mr. Coe testified as a fact witness about his actions with respect to testing the sample of defendant's blood submitted to the laboratory and the results produced. Defendant's trial counsel not only questioned Mr. Coe prior to introduction of the lab report but also extensively cross-examined him with respect to laboratory procedures. Trial Tr, Vol. II, pp 146-156. Mr. Coe's testimony as a fact witness was properly admitted[.]

(Kent Cty. Cir. Ct. Ord., ECF No. 13-9, PageID.685-686.) Then, with regard to Trooper Young's testimony, the court stated:

> A similar argument was raised concerning the admission of Trooper Young's testimony. On July 29, 2001 Joseph Young, a Michigan State Police trooper, testified about his observations and actions at the crash scene on the morning of the accident; his identification of People's Exhibits 22 and 23, aerial views of the accident scene; a video approximation of the accident he assisted with after the accident; and his investigation. Trooper Young was never qualified or examined as an expert witness. Defendant's trial attorney appropriately questioned this witness regarding how and when the video was made and what it depicted. Trial Tr, Vol. II, pp 117 - 145. This video was properly admitted as demonstrative evidence. The prosecution offered the video as demonstrative evidence. "Demonstrative evidence . . . is admissible where it may aid the fact finder in reaching a conclusion on a matter material to the case." *People v Castillo*, 230 Mich App 442, 444; 584 NW2d 606 (1998). *See also Lopez v Gen Motors Corp*, 224 Mich App 618, 628; 569 NW2d 861 (1997) (demonstrative evidence is admissible if it bears a "substantial similarity" to an issue of fact involved in a trial). Trooper Young's testimony as a fact witness and the demonstrative video were properly admitted[.]

(*Id.*, PageID.686.)

Judge Buth's determinations of admissibility as a matter of state law are, for the reasons stated above, binding upon this Court.  Moreover, his determinations of fact regarding the nature of the testimony of Coe and Young are presumed correct and, even without the presumption, are eminently reasonable on the record.  Thus, to prevail, Petitioner must identify a Supreme Court case that conflicts with Judge Buth's decision or decides the matter differently on indistinguishable facts.    Petitioner claims he has found such clearly established federal authority in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).

In both *Daubert* and *Kumho Tire*, the Supreme Court held only that, in federal courts, applying Rule 702 of the Federal Rules of Evidence, opinion testimony was required to meet the standard set forth in those cases.  *See Daubert*, 509 U.S. 579 (passim); *Kumho Tire*, 526 U.S. at 141, 147-48, 150.  At no time has the Supreme Court held that *Daubert* and *Kumho Tire* provide the standard for evaluating whether an admission of evidence violates due process.  *See Norris v. Schotten*, 146 F.3d 314, 335 (6th Cir. 1998) ("*Daubert* concerned the Federal Rules of Evidence which is not relevant to [federal habeas review of] appellant's [state court] conviction.") As this Court stated in *Bal v. McKee*, No. 1:10-cv-21, 2010 WL 707356 (W.D. Mich. Feb. 23, 2010):

> [T]he Federal Rules of Evidence apply in federal trial proceedings, not in state trial proceedings.  The Supreme Court strictly engaged in statutory construction in interpreting Rule 702 *in Daubert*. *See* 509 U.S. at 587.  The [Supreme] Court has never indicated that a failure to follow Federal Rule of Evidence 702 or *Daubert* rises to the level of a constitutional violation.  As a consequence, Petitioner cannot show that the state court's evidentiary determination was either contrary to or an unreasonable application of established Supreme Court precedent.

*Bal*, 2010 WL 707356 at *12.  The same is true here.  Petitioner has failed to show that the admission of Mr. Coe's or Trooper Young's testimony was contrary to or an unreasonable

- 18 -

application of established Supreme Court precedent.  Accordingly, his habeas issues X and XI are without merit.

## V.   Petitioner's interpreters (habeas issue XII)

Petitioner's misplaced reliance on *Daubert* continues with respect to the interpreters at his trial and sentencing.  An accused's inability to speak or understand the language of the criminal proceedings threatens to compromise his rights: to confrontation, *Pointer v. Texas*, 380 U.S. 400, 404 (1965); to be present at the criminal proceedings, *Lewis v. United States*, 146 U.S. 370, 372 (1892); to meaningfully participate, *Dusky v. United States*, 362 U.S. 402 (1960); to the effective assistance of counsel, *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970); and, therefore, to fundamental fairness.  Nonetheless, the United States Supreme Court has not yet recognized a constitutional right to a court-appointed interpreter.  *See Nguyen v. Booker*, 496 F. App'x 502, 506 (6th Cir. 2012) ("Translator services are provided as a matter of course in federal criminal proceedings . . . . [I]t does not follow that this creates a constitutional right to an interpreter in state court proceedings.  Indeed, other courts to have considered [such] scenarios . . . have all noted that the Supreme Court has not spoken to this issue.") (citations omitted).

Petitioner contends his constitutional rights were violated because the state court did not conduct a *Daubert* hearing to confirm that his interpreter was qualified as an expert. Michigan Rule of Evidence 604 provides: "An interpreter is subject to the provisions of these rules relating to qualification as an expert and the administration of an oath or affirmation to make a true

- 19 -

translation." MICH. R. EVID. 604. Petitioner does not otherwise challenge the expertise of the two

persons who served as interpreters during Petitioner's trial and sentencing.[6]

The state court rejected Petitioner's contention that a *Daubert* hearing[7] was required

to establish the qualifications of an interpreter:

> Defendant now challenges the qualifications of the interpreter who was sworn
> to truthfully translate from English to Spanish and Spanish to English. Defendant
> claims that prior to swearing the interpreter, this Court was required to conduct a
> hearing in accordance with *Daubert v Merrell Dow Pharm*, Inc, 509 US 579; 113 S
> Ct 2786; 125 L.Ed.2d 469 (1993). The purpose of a *Daubert* hearing is to filter out
> unreliable expert evidence. *Chapin v A & L Parts, Inc*, 274 Mich App 122, 139; 732
> NW2d 578 (2007). In this case the interpreter was not an expert witness presenting
> a novel scientific theory; rather, he was an individual providing translation services
> to defendant only. Defendant acknowledges that prior to testimony each day of trial
> as well as at the beginning of the sentencing hearing, the interpreter was duly sworn
> to truthfully translate the proceedings as required by MRE 604. Defendant's brief,
> pp 30 - 31; MRE 604. No objection was ever made to the interpreter's qualifications
> or the translation services provided. No evidence was presented to support
> defendant's claim that translation errors occurred. Had an objection been made to
> the interpreter's qualifications or a challenge raised regarding the accuracy of the
> translations, this Court could easily have addressed these issues. Defendant will not
> be allowed to assign error to something that his own counsel deemed proper and thus
> harbor error as an appellate parachute. *People v Breeding*, 284 Mich App 471,
> 486-487; 772 NW2d 810 (2009) citing *People v Green*, 228 Mich App 684, 691; 580
> NW2d 444 (1998).

---

[6]The closest Petitioner comes to challenging the interpreters provision of services is the following: "At one point
in time Mr. Franco-Avina asked the interpreter what was being said in the courtroom because he could not understand
what was being said. Mr. Romero simply looked up from his phone where he was either texting or e-mailing someone
and said, "They aren't talking about anything." (Pet.'s Br. in Support of Mot. for Relief from J., ECF No. 13-6,
PageID.630.) Petitioner does not identify when the incident occurred, whether the court was on the record at the time,
or the duration of the incident. Petitioner offers nothing to suggest that this single isolated incident had any impact on
his ability to confront witnesses, meaningfully participate in trial, confer with counsel, or understand trial or sentencing
proceedings.

[7]As noted above, *Daubert* interpreted Federal Rule of Evidence 702. It does not apply directly to Michigan
Rule of Evidence 702. The Michigan Supreme Court, however, has stated "MRE 702 has . . . been amended explicitly
to incorporate *Daubert*'s standards of reliability." *Gilbert v. Daimler Chrysler Corp.*, 685 N.W.2d 391, 408 (Mich.
2004). For ease of reference, therefore, I will refer to the state court proceeding whereby a state trial court determines
the admissibility of expert testimony under Michigan Rule of Evidence 702 as a *Daubert* hearing, just as the state trial
court did.

(July 19, 2013 Kent Cty. Cir. Ct. Order, ECF No. 13-9, PageID.686.)  The trial court distinguished between establishing the qualifications of an expert and concluding that the opinion testimony of that expert would be admissible.

Certainly an expert must be qualified[8] before his or her testimony can be admitted; but, qualification is only one of three requirements that must be met before expert testimony can be admitted under Michigan Rule of Evidence 702.  *Craig v. Oakwood Hospital*, 684 N.W.2d 296, 304 (Mich. 2004) ("The plain language of MRE 702 establishes three broad preconditions to the admission of expert testimony.  First, the proposed expert witness must be 'qualified' to render the proposed testimony.") (footnotes omitted).[9]  The second requirement is that the proposed testimony must "'assist the trier of fact to understand the evidence or to determine a fact in issue . . . .'" *Id.* at 305 (quoting MICH. R. EVID. 702).  And, finally, the evidence must be reliable.[10]  The *Daubert* hearing is directed specifically to reliability.  *Daubert*, 509 U.S. at 589 ("[T]he trial judge must ensure that any and all scientific testimony or evidence is not only relevant, but reliable."); *Edry v. Adelman*, 786 N.W.2d 567, 570 (Mich. 2010) (same); *Chapin v. A & L Parts*, Inc., 732 N.W.2d 578, 587 (Mich. Ct. App. 2007) ("The only proper role of a trial court at a *Daubert* hearing is to filter out expert evidence that is unreliable . . . .")  Even when the matter at issue is the reliability of a

---

[8]Under Michigan Rule of Evidence 702 an expert must be "qualified . . . by knowledge, skill, experience, training, or education."  MICH. R. EVID. 702.

[9]*See also* MICH. COMP. LAWS § 600.2955(1), regarding expert testimony in tort actions, which similarly separates admissibility into three inquiries: "a scientific opinion rendered by an otherwise [1] qualified expert is not admissible unless the court determines that the opinion is [2] reliable and [3] will assist the trier of fact."  *Id.*

[10]Establishing the expertise is prefatory to establishing the reliability and, therefore, the admissibility of the expert's testimony by determining that "(1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts."  MICH. R. EVID. 702.  These criteria were added to Michigan Rule of Evidence 702 effective January 1, 2004 for the expressed purpose of incorporating the requirements of *Daubert* into the Michigan rule.  Staff Comment to 2004 Amendment of  MICH. R. EVID. 702.

qualified expert's testimony, however, a hearing is not required.  *See, e.g., Clay v. Ford Motor Co.*, 215 F.3d 663, 667 (6th Cir. 2000) ("The district court is not obligated to hold a *Daubert* hearing.")

Petitioner offers no authority for the proposition that a *Daubert* hearing must be conducted to assess the qualifications of an interpreter, where, as noted by the trial court, the reliability of evidence is simply not at issue.  Critically, if and when a *Daubert* hearing is required to give effect to Mich. R. Evid. 604's statement that "[a]n interpreter is subject to the provisions of these rules relating to qualification as an expert" is purely a matter of state law.[11]  As set forth above it is not the province of a federal habeas court to re-examine state-law determinations on state-law questions.  *Bradshaw*, 546 U.S. at 76); *Estelle*, 502 U.S. at 68.  The decision of the state courts on a state-law issue is binding on a federal court.  *See Wainwright*, 464 U.S. at 84.

Petitioner has failed to show that the state court's resolution of his constitutional challenge regarding his interpreters is contrary to, or an unreasonable application of, clearly established federal law.  Moreover, the state court's factual determinations made in support of the resolution are reasonable on the record.  Accordingly, Petitioner is not entitled to habeas relief.

VI.    Exclusion of a Latino juror (habeas issue XIII)

Petitioner notes that the prosecution exercised one of its peremptory strikes to exclude one of two Latino jurors from the pool.[12]  Petitioner contends that in striking the last Latino

---

[11]The parallel federal rule severed any textual connection between the qualification of interpreters and the qualification of experts in 2011 when Fed R. Evid. 604 was amended, dropping the language cited above in favor of "[a]n interpreter must be qualified . . . ." *Id.*

[12]It is undisputed that defense counsel dismissed the other Latino juror:

In Mr. Franco-Avina's case there were two Latino people present in the jury venire.  One was struck from the jury on a peremptory challenge by the defense.  Later, after voir dire of many more jurors, the prosecution struck the only remaining Latino from the jury on a peremptory challenge.

juror, the prosecutor violated Petitioner's equal protection rights under the clearly established federal authority of *Batson v. Kentucky*, 476 U.S. 79 (1986).

In *Batson*, 476 U.S. at 96, the Supreme Court articulated a three-step analysis to be applied to an Equal Protection Clause claim that purposeful discrimination occurred in the selection of the petit jury based solely on the prosecutor's exercise of his peremptory challenges at trial. *See United States v. Bartholomew*, 310 F.3d 912, 919 (6th Cir. 2002). First, the Defendant must establish a prima facie case of racial discrimination. *See United States v. Copeland*, 321 F.3d 582, 599 (6th Cir. 2003). This requires an initial showing that "the defendant . . . is a member of a cognizable racial group . . . and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race." *Batson*, 476 U.S. at 96 (citation omitted). "[T]he defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.'" *Id.* (quoting *Avery v. Georgia*, 345 U.S. 559, 562 (1953)). Ultimately, the Defendant, relying on this presumption and other facts, must "raise an inference that the prosecutor used [the practice of peremptory challenges] to exclude the veniremen from the petit jury on account of their race." *Id.*

Second, once the Defendant has raised the necessary inference, "the burden shifts to the state to come forward with a neutral explanation for challenging [potential] jurors." *Id.* at 97. "The government is not required to persuade the court that its reasons for dismissing the juror were well-founded; rather it need only demonstrate that its reasons were race-neutral." *Copeland*, 321 F.3d at 599. More specifically, "[t]he second step of this process does not demand an explanation

_____

(Pet.'s Br., ECF No. 2, PageID.69-70.)

- 23 -

that is persuasive or even plausible.  'At this . . . step of the inquiry, the issue is the facial validity of the prosecutor's explanation.  Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.'" *Purkett v. Elem*, 514 U.S. 765, 767-68 (1995) (quoting *Hernandez v. New York*, 500 U.S. 352, 360 (1991)).

Third, the party opposing the strike must demonstrate that the prosecutor's purported explanation is merely a pretext for racial motivation.  *See McCurdy v. Montgomery County*, 240 F.3d 512, 521 (6th Cir. 2001) (describing *Batson* test).  Ultimately, the court must determine "whether the defendant has carried his burden of proving purposeful discrimination."  *Hernandez*, 500 U.S. at 359.  In making this determination, the Court presumes that the facially valid reasons proffered by the prosecution are true.  *Id.* at 359-60.  Racially discriminatory purpose or intent must be affirmatively shown by the opponent of the strike.  *Id.* at 360.  The ultimate burden of persuasion always remains with the opponent of the strike.  *See United States v. McFerron*, 163 F.3d 952, 955 (6th Cir.1998).

Notwithstanding this three-part test, however, the Supreme Court has held that the question of whether a prima facie case has been established becomes moot once a court rules on the ultimate question under *Batson* of whether there was purposeful discrimination. *Hernandez*, 500 U.S. at 360; *Lancaster v. Adams*, 324 F.3d 423, 432-33 (6th Cir. 2003).  "Once a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court had ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot."  *Hernandez*, 500 U.S. at 359; *Lancaster*, 324 F.3d at 433.

- 24 -

Here, Petitioner did not object on *Batson* grounds at trial.  He raised the issue for the first time in his post-conviction motion under MICH. CT. R. 6.500 *et seq*.  (Pet.'s Br. in Support of Mot. for Relief from J., ECF No. 13-6.)   The prosecutor responded as follows:

> Even if Defendant can be found to have made a prima facie showing of discrimination, the record clearly establishes a race-neutral reason for the prosecutor to have excused the juror.  Juror Mateo, on questioning by defense counsel, stated that he had had contact with the police over "a couple of tickets, speeding."  (T I: 102).  On questioning by the prosecutor, Juror Mateo reiterated that he had "just minor tickets of speeding."  When asked if any of the tickets would have relevance to the present case (OUIL causing death), Mateo answered "No."  The prosecutor then directly confronted Mateo as to whether one of the tickets was for being a minor in possession of alcohol in a motor vehicle.  Mateo admitted that he did have a ticket for that offense. (T vol I: 103 ).
>
> This case involved allegations that Defendant, while intoxicated, drove a motor vehicle in a manner that caused the death of another person.  Prospective juror Mateo had a prior ticket for being a minor in possession of alcohol in a motor vehicle.  It was reasonable to expect that Mateo would be sympathetic to a defendant in an OUIL case.  More significant, however, is the fact that Mateo concealed that information.  Twice Mateo expressly stated that he had a couple of tickets "for speeding."  Only when directly confronted by the prosecutor did he acknowledge the existence of the minor-in-possession ticket.  Mateo's dishonesty coupled with the nature of his previous ticket was more than adequate to constitute a race-neutral basis for the prosecutor to exercise a peremptory challenge.  Defendant has failed to demonstrate that any *Batson* violation occurred..

(Memo. in Opposition to Mot. for Relief from J., Ecf No. 13-7, PageID.674.)  Although Petitioner asked the trial court to strike the prosecutor's brief as untimely (Pet.'s Mot to Disregard the People's Memo., ECF No. 13-8), he did not otherwise counter the prosecutor's non-discriminatory reason for exercising the peremptory strike.

The trial court found the prosecutor's position persuasive:

> Defendant now argues that the prosecution dismissed one of the two Latino individuals in the jury venire for racial reasons.  Under the Equal Protection Clause of the Fourteenth Amendment, a party may not exercise a peremptory challenge to remove a prospective juror solely on the basis of the person's race.  In *Batson v Kentucky*, 476 US 79 (1986), the United States Supreme Court announced a

three-step process for determining the constitutional propriety of a peremptory challenge. Our Supreme Court applied this test in *People v Knight*, 473 Mich 324, 335-336; 701 NW2d 715 (2005). Here defendant acknowledges that one individual was excused by defense counsel and that a timely *Batson* challenge must be raised before the jury is sworn. Failure to timely object constitutes a waiver of the issue. *Id.* Even if the issue was not waived, defendant must first make a prima facie showing that the prosecution's use of the peremptory challenge was based solely on race. Neither evidence of the prospective juror's race nor evidence of any circumstances that would raise an inference that the prosecution's peremptory challenge was used to exclude this juror on the basis of race was presented by defendant. Even if defendant could have made the required showing of discrimination, the trial transcript clearly demonstrates a race-neutral basis for exercising a peremptory challenge to excuse prospective juror Mateo. See Trial Tr, Vol I, pp 102 - 103. Defendant failed to show that any *Batson* violation occurred[.]

(July 9, 2013 Ord., ECF No. 13-9, PageID.686-687.)

The trial court relied on *Batson* in rejecting Petitioner's argument. So, it cannot be said that the court applied the wrong standard. Moreoever, the court's application of *Batson* was not unreasonable. He concluded that Petitioner had failed to raise an inference of discrimination at the first step. Even if Petitioner succeeded at the first step, the court noted that the prosecutor had provided a non-discriminatory reason for the exercise of the peremptory strike. In response, at the third step, Petitioner offered nothing to show that the proffered non-discriminatory reason was pretextual. Thus, the court closely followed the analysis required by *Batson*. Moreover, the court's determination that the juror's ticket for an offense involving a vehicle and alcohol provided a sufficient non-discriminatory reason for the exercise of the peremptory challenge is not unreasonable on this record. In short, Petitioner has failed to carry his burden to show that he is entitled to habeas relief based on the prosecutor's peremptory dismissal of juror Mateo.

VII.    Ineffective assistance of trial counsel (habeas issue IX)

Petitioner raises several challenges to his trial counsel's performance. He represents that these allegations of counsel's error are different from the allegations he raised on direct appeal.

Specifically, Petitioner contends counsel was ineffective for her: (1) failure to *voir dire* an expert witness; (2) failure to challenge two jurors; and (3) failure to "subject the prosecutor's case to an adversarial testing."  (Pet.'s Br. in Support of Habeas Pet., ECF No. 2, PageID.34.)

For counsel's error to be considered a Sixth Amendment violation, it must satisfy the test from *Strickland*.  As noted above, the petitioner must prove:  (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.  *Strickland*, 466 U.S. at 687-88.

### A.    Failure to *voir dire* expert

Petitioner never gets past the first step on his claim that counsel failed to *voir dire* witness Thomas Coe.  As set forth above, the trial court determined that Coe testified as a fact witness, not an expert witness.  *See* § IV, *infra*.  Accordingly, any attempt to *voir dire* Coe to call into question his qualifications as an expert would have been futile.  Counsel's failure to raise a meritless issue does not constitute ineffective assistance of counsel.  *See Smith v. Bradshaw*, 591 F.3d 517, 523 (6th Cir. 2010); *O'Hara v. Brigano*, 499 F.3d 492, 506 (6th Cir. 2007); *Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *Harris v. United States*, 204 F.3d 681, 683 (6th Cir. 2000).  "Omitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013).

### B.    Failure to challenge two jurors

Petitioner argues that his counsel was ineffective for failing to challenge two jurors, Janis Bylsma and Justin Hoskins. (Pet.'s Br. in Support of Mot. for Relief from J., ECF No. 13-6, PageID.616.)  Petitioner reports that those two jurors feared letting a guilty man go free more than

they feared convicting an innocent man.  (*Id*.)   The record supports Petitioner's report.  (Trial Tr. I, ECF No. 13-1, PageID.403-404.)  Petitioner then leaps to the conclusion that Ms. Bylsma's and Mr. Hoskins' prioritization of fears displayed their bias against him and required his counsel to challenge them.

As the Sixth Circuit noted in *Hughes v. United States*, 258 F.3d 453 (6th Cir. 2001), "[t]he impaneling of a biased juror warrants a new trial.  If an impaneled juror was actually biased, the conviction must be set aside."  *Hughes*, 258 F.3d at 463.  The presence of a biased juror is "a 'structural defect in the constitution of the trial mechanism' that defies harmless error analysis[.]" *Id.*  To prevail on his claim, however, "[P]etitioner must show that the juror[ was] actually biased against him." *Holder v. Palmer*, 588 F.3d 328, 339 (6th Cir. 2009).[13]

The fact that Bylsma and Hoskins feared letting a guilty man go free more than convicting an innocent man falls short of the necessary showing.  For example, in *Hughes*, the juror stated she did not think she could be fair and was never thereafter rehabilitated.  *Hughes*, 258 F.3d at 456.  Similarly in *Wolfe v. Brigano*, 232 F.3d 499, 502-503 (6th Cir. 2001), it was considered to be sufficient evidence of actual bias where two jurors indicated that they knew the victim's parents and did not believe they could be fair and impartial and, despite attempts at rehabilitation, only indicated they would try to be fair and impartial.  In *Miller v. Webb*, 385 F.3d 666, 674-675 (6th Cir. 2004) it was considered sufficient evidence of actual bias where a juror indicated she knew the victim and had sympathy for her and that, although she thought she could be fair, she had existing feelings about the victim.  Neither counsel nor the court rehabilitated the juror thereafter.  Similarly, in *Franklin v. Anderson*, 434 F.3d 412, 427-428 (6th Cir. 2006), the court found actual bias where

---

[13]Whether a juror is partial is a question of fact.  *Patton v. Yount*, 467 U.S. 1025, 1036 (1984).  The state court's finding on the issue is entitled to a presumption of correctness and special deference.  *Id.* at 1038.

the challenged juror "five times gave the definite impression that she could not faithfully apply the law concerning the burden of proof . . . [and] even after she was corrected three times by the judge, she still insisted with her last statement that the defendant had to proven innocent."

A review of Sixth Circuit authority reveals that the juror's statement of partiality must be unambiguous and, where rehabilitation is attempted, must persist to warrant a determination of actual bias that requires reversal.  This is well-illustrated in a series of "actual bias" assessments in death penalty cases as reviewed in *Trimble v. Bobby*, 804 F.3d 767 (6th Cir. 2015):

> Two of our cases serve as bookends to our analysis of this claim.  On the one hand, in *Williams v. Bagley*, 380 F.3d 932 (6th Cir.2004), we held that a challenged juror was not an automatic death penalty juror.  Although that juror "did not stake a firm 'pro-death penalty' stance," she eventually declared that her "bottom line" was that she would "vote for the death penalty because there's eligibility for parole." *Id.* at 958 (internal quotation marks omitted).  The juror, however, later indicated "that she could set aside her personal beliefs concerning parole and follow the court's instructions" and that the sentencing options would "start out equally" in her mind. *Id.* (internal quotation marks omitted).  We held that the juror would not automatically apply the death penalty in every case because she "evinced a lack of bloodthirst, professed a dislike for all the sentencing options, and attested to her ability to follow the court's instructions despite her aversion to parole." *Id.* at 959.
>
> On the other hand, in *White*, 431 F.3d at 541, we held that a challenged juror was an automatic death penalty juror.  The juror in that case made cursory statements that she could follow the law while also stating "repeatedly that she had doubts as to whether she could follow the law," and that "she did not think it would be fair to the defendant for her to sit on the jury." *Id.*  We highlighted three particularly troubling elements of her voir dire: 1) that she had already decided what punishment was appropriate; 2) that she "relished taking part in the imposition of the death penalty in this particular case"; and 3) that she "believed that her anticipated outcome of the case was the true and honest one, thus reflecting an inherent bias." *Id.*  We held that the juror would automatically apply the death penalty in this case because "[t]hese statements not only indicate that [the juror] had a strong inclination toward imposing the death penalty, they also indicate that she was looking forward to participating in the imposition of this particular defendant's sentence." *Id.*
>
> Occupying the vast space between *Williams* and *White* is *Bowling v. Parker*, 344 F.3d 487 (6th Cir.2003).  In that case, we held that a juror with marked similarities to Juror 139 was not an automatic death penalty juror.  That juror "did

initially state that he would automatically give the death penalty to those who met the aggravating factor, but later he expressly said that he would consider mitigating evidence." *Id.* at 520.  Because the trial court asked him "thorough questions, and [his] responses showed that he was not someone who would automatically impose the death penalty in all cases" when he affirmed that he would consider mitigating evidence, we held that he was not "an 'automatic death penalty' juror within the meaning of Morgan." *Id.* at 520.  Although this was an AEDPA case, we relied on AEDPA deference only in the alternative.  *Id.*  Our holding rested primarily on the fact that "given the deference we give to trial courts' determinations of impartiality," there was "no constitutional error" in allowing the challenged juror to sit on the penalty-phase jury.  *Id.*

*Trimble*, 804 F.3d at 778-779.

In Petitioner's case, the *voir dire* statements upon which Petitioner founds his claim of bias (that the jurors were more fearful of releasing a guilty man than convicting an innocent man) fail to demonstrate any partiality against Petitioner or an inability or refusal to follow the court's instructions.  Thus, the statements do not reveal any actual bias and counsel was not ineffective for failing to challenge the jurors for cause or dismiss them with a peremptory challenge.  The trial court's determination that counsel was not ineffective for that reason is neither contrary to, nor an unreasonable application of *Strickland*.

C.     <u>Failure to subject the prosecutor's case to adversarial testing</u>

Petitioner's reference to the absence of "adversarial testing" pays tribute to *Strickland* and its companion case, *United States v. Cronic*, 466 U.S. 648 (1984).  In *Cronic* the Supreme Court explained that when a defense attorney "entirely fails to subject the prosecution's case to meaningful adversarial testing[,]" it is the constitutional equivalent to not having counsel at all.  *Id.* at 659.  The Court concluded that such a failure requires no showing of prejudice.  *Id.*  In *Strickland*, the Court again noted the importance of "adversarial testing" to permit a just resolution by an impartial tribunal.  *Strickland*, 466 U.S. at 685-688.

It is beyond dispute that adversarial testing is a critical, foundational aspect of a fair trial. Petitioner's talismanic reference to a lack of adversarial testing here, however, is wholly conclusory and entirely unsupported by the record.[14] The trial transcripts reveal that Petitioner's trial counsel actively participated in every phase of the trial from jury selection through the verdict. She posed objections to evidence, cross-examined witnesses, and presented evidence and argument on Petitioner's behalf. Counsel's participation is so far removed from the constructive denial of counsel contemplated by *Cronic* that Petitioner's argument is patently frivolous.

VIII.    Ineffective assistance of appellate counsel

Petitioner contends that his appellate counsel was ineffective for failing to consult with Petitioner before filing the initial brief on appeal, failing to provide Petitioner with a copy of the appeal brief in sufficient time to permit Petitioner to file a Standard 4 brief[15], and for failing to raise the issues Petitioner raised in his Rule 6.500 motion.

---

[14]The sum total of Petitioner's argument regarding counsel's failure to subject the prosecutor's case to an adversarial testing is the repetition of the phrase "failing [or failed] to subject the prosecutor's case to an adversarial testing." *See* (Pet.'s Br. in Support of Mot. for Relief from J., ECF No. 13-6, Page ID.615), (Pet.'s Mich. Ct. App. Application for Leave to Appeal, ECF No. 13-12, PageID.957), (Pet.'s Mich Application for Leave to Appeal, ECF No. 13-13, PageID.1052-1053), (Pet.'s Br. in Support of Petition, ECF No. 2, PageID.54).

[15]Michigan Supreme Court Administrative Order 2004-6 sets forth minimum standards for indigent criminal appellate defense services, including the following:

Standard 4

When a defendant insists that a particular claim or claims be raised on appeal against the advice of counsel, counsel shall inform the defendant of the right to present the claim or claims *in propria persona*. Defendant's filing shall consist of one brief filed with or without an appropriate accompanying motion. Counsel shall also provide such procedural advice and clerical assistance as may be required to conform the defendant's filing for acceptability to the court. The defendant's filing *in propria persona* must be received by the Court of Appeals within 84 days after the appellant's brief is filed by the attorney. . . .

Mich. Administrative Order No. 2004-6.

- 31 -

An appellant has no constitutional right to have every non-frivolous issue raised on appeal.  "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)). To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions."  *Strickland*, 466 U.S. at 688.  As the Supreme Court recently has observed, it is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another.  *Smith v. Robbins*, 528 U.S. 259, 289 (2000).  In such cases, the petitioner must demonstrate that the issue not presented "was clearly stronger than issues that counsel did present."  *Id.*

The trial court rejected Petitioner's argument that his appellate counsel was ineffective:

> Finally, defendant argues that appellate counsel's failure to consult with him prior to filing a brief on his behalf prevented appellate counsel from considering all issues not readily apparent from the record and effectively prevented him from exercising his right to file a Standard 4 Brief.  To succeed on a claim of ineffective assistance of counsel, defendant bears the "heavy burden" of showing that, but for an error by counsel, the result of the proceedings would have been different, and that the proceedings were fundamentally unfair or unreliable.  *People v Petri*, 279 Mich App 407; 760 NW2d 882 (2008).  After a careful review, this Court has concluded that none of the issues presented in defendant's motion for relief from judgment has any legal merit and, accordingly, the outcome of the appeal would not have been different even if these issues had been briefed for the Court of Appeals.  Appellate counsel's failure to raise every conceivable issue does not constitute ineffective assistance of counsel.  *People v Reed, supra*[.]

(July 9, 2013 Ord., ECF No. 13-9, PageID.687.)

The trial court's resolution of the matter is consistent with, not contrary to, the clearly established federal law of *Strickland*.  Moreover, the court's application of *Strickland*, and the court's supporting factual determinations, are reasonable.  Petitioner cannot make the showing necessary to demonstrate ineffective assistance of appellate counsel because, as analyzed in detail above, the arguments appellate counsel failed to present were meritless.  Thus, the arguments were certainly not clearly stronger than the arguments counsel chose to present on direct appeal and counsel's failure to raise them "is neither professionally unreasonable nor prejudicial." *Coley*, 706 F.3d at 752.  Moreover, even if appellate counsel's alleged failure to consult with Petitioner or preserve Petitioner's ability to file a Standard 4 brief were professionally unreasonable, Petitioner cannot demonstrate prejudice because the arguments Petitioner might have added because of the consultation or the Standard 4 brief were meritless. In short, Petitioner has failed to carry his burden and he is not entitled to habeas relief.

## Certificate of Appealability

Even though I have concluded that Petitioner's habeas petition should be denied, under 28 U.S.C. § 2253(c)(2), the Court must also determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467.

I have examined Petitioner's claim under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  Under *Slack*, to warrant a grant of the certificate,

"[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claim. *Id.*

I find that reasonable jurists could not conclude that this Court's denial of Petitioner's claim would be debatable or wrong. Therefore, I recommend that a certificate of appealability should be denied.

## **Recommended Disposition**

For the foregoing reasons, I respectfully recommend that the habeas corpus petition be denied. I further recommend that a certificate of appealability be denied.

Date: July 11, 2017                                          /s/ Ellen S. Carmody
                                                            ELLEN S. CARMODY
                                                            United States Magistrate Judge

## **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).